

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2006

# Daud v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5051

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Daud v. Atty Gen USA" (2006). *2006 Decisions*. Paper 131.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/131

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5051
_____

MOHAMMAD DAUD,
                                        Petitioner,

vs.

ALBERTO R. GONZALES,
Attorney General of the United States,
                                        Respondent.
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
(BIA No. A95-829-903)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 27, 2006

Before: FUENTES and GARTH, Circuit Judges, and POLLAK, District Judge[1]

(Opinion Filed: December 5, 2006)
_____

OPINION
_____

---

[1]The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

Garth, Circuit Judge:

Mohammed Daud appeals from a decision of the Board of Immigration Appeals adopting and affirming the decision of an Immigration Judge which denied his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. He also appeals the Board's denial of his motion to remand the case to the Immigration Court to consider his Application to Adjust Status. We will deny in part and dismiss in part the petition for review.

I.

Daud was born in Pakistan on March 20, 1949. He entered the United States as a non-immigrant visitor on March 27, 2001, on a B-2 visa that expired on June 26, 2001. Nearly two years later, on March 19, 2003, Daud was served with a Notice to Appear by the Immigration and Naturalization Service ("INS"). The Notice to Appear alleged that Daud was removable pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), because he had remained in the United States past the expiration of his visa.

On July 23, 2003, Daud filed an application for asylum, withholding of removal and protection under the United Nations Convention Against Torture ("CAT"). In his application, Daud stated that he was a member of the Pakistan Armed Forces and that, in this capacity, he oversaw the arrest of a powerful narcotics and weapons smuggler named Pakistan Khan. Daud stated that, as a result of arresting Khan, he and his family began receiving threats from the Taliban, who were supporters of Kahn and with whom Khan was associated. Daud stated that he reported these threats to the police, but that they

-1-

would not provide protection because they, too, were affiliated with the Taliban.

On February 25, 2004, a hearing with respect to Daud's applications was held before an Immigration Judge. Daud testified as follows. In 1989, Daud was a commander in the Frontier Corps of the Pakistani army, assigned to conduct operations in northwest Pakistan. He was ordered by his superiors to arrest Pakistan Khan, whom he described as a notorious narcotics and gun smuggler. Daud stated that Khan then threatened him with death in an effort to dissuade him from attempting the arrest. As a result of these threats, in July 1989, Daud moved his family to his home village of Baffai. In August 1989, after two unsuccessful attempts, Daud's unit arrested Khan along with ten or twelve of his associates. Although Daud provided the IJ with evidence of his service in the Pakistani military, he was unable to provide any documentation about Khan or his arrest.

Daud testified that, after the arrest, people associated with Khan started threatening him, stating that they would kill him and his male family members. Daud stated that he was afraid because Khan was affiliated with and had many supporters among the Taliban. Daud's commander then transferred him to another part of Pakistan called Chidraf, where he served until his retirement in 1992. He then returned to his hometown of Baffai.

Daud testified that on December 14, 1994, after Khan's release from prison, he received a threatening phone call from one of Khan's Taliban supporters. On another occasion, in February or March 1995, Khan's men actually entered his home. Daud testified that he called the police, but that they did nothing because they are under the

-2-

influence of the Taliban. As a result of these occurrences, Daud moved to several places throughout Pakistan, including Mirpur, Hazara, and Karachi. Daud testified that Khan's men followed him to each of these places. Daud then obtained a visa to accompany his brother, who required medical treatment, to the United States.

Daud testified that, if he returns to Pakistan, Khan's men will kill him and his family. Daud admitted to the IJ, however, that he had never been physically harmed by Khan or his associates. Daud also testified that his family had begun negotiations with Khan for a "Dastoor," which he described as a negotiation to repay "damage." According to Daud, Khan has demanded that Daud's youngest daughter marry him, and that Daud pay restitution of 50 Locs. Daud stated that he has no intention of complying with either of these demands.

On the hearing date, Daud also submitted an affidavit to explain why he filed his application for asylum nearly two years after he arrived in the United States – more than a year past the one-year filing deadline imposed by the INA. In the affidavit, Daud stated that he was hoping the political situation in Pakistan would improve and enable him to return, but that this has not happened. Indeed, Daud asserted that "the Taliban supporters are increasing in Pakistan every day."

II.

The IJ rendered an oral decision on February 25, 2004, denying Daud's applications for asylum, withholding of removal, and relief under the CAT. The IJ denied Daud's application for asylum on several grounds. First, the IJ found that Daud had not filed his application within one year of arriving in the United States as required. The IJ rejected Daud's claim that the increased power of the Taliban constituted a changed or extraordinary circumstance justifying the late filing. The IJ reasoned that, having fled Pakistan for fear of imminent death, Daud should have filed his asylum application immediately.

The IJ also rejected Daud's asylum petition on the merits. The IJ found Daud's testimony not credible, both because he failed to provide independent documentation about Khan or his arrest, and also because of several "material discrepancies" between Daud's testimony and his application for asylum. For example, while Daud's application states that he moved to Mirpur in January 1995, his testimony, at least initially, was that he moved to Mirpur only after receiving threats and "being followed" in February or March 1995. Daud attempted to explain this inconsistency by stating that the threats occurred after he moved to Mirpur while he was on a visit back to Baffai. Additionally, in his application, Daud stated that he "ignored" the threatening December 14, 1994 phone call, whereas he testified that the phone call was one of the reasons he fled to Mirpur. Because of these inconsistencies, as well as Daud's failure to provide documentation of Khan's existence, arrest, or subsequent threats, the IJ found Daud's

-4-

testimony not credible.

The IJ also held that, even if Daud's testimony were true, he would still be unable to meet his burden of showing a well-founded fear of persecution if returned to Pakistan. The IJ found that the threats directed against Daud, and the fear "that people might be following him" were insufficient to meet his burden of proof.[2] The IJ therefore denied Daud's application for asylum. The IJ also denied relief under the CAT, finding that Daud had failed to show that Khan is a member of, or acting on behalf of, the Pakistani government. Daud timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA").

### III.

While his appeal to the BIA was pending, Daud filed a motion with the BIA seeking to have his case remanded to the IJ for consideration of his recently filed application to adjust status. This application was based upon Daud's marriage to a United States citizen, on May 17, 2004, nearly three months after the IJ issued his decision.

On October 17, 2005, the BIA adopted and affirmed the IJ's opinion. The BIA affirmed the IJ's finding that Daud's asylum application was time-barred, and that neither extraordinary nor changed circumstances had been demonstrated to excuse the untimely

---

[2]The IJ also found that, even if Daud would be subject to persecution in some pro-Taliban areas of Pakistan, he could relocate to another, safer, area within the country. Additionally, the IJ held that Daud had not established the required nexus between the alleged persecution and any of the statutory grounds meriting asylum protection: race, religion, nationality, membership in a particular social group, or political opinion.

filing.  The BIA also affirmed the IJ's alternative holding that Daud failed to meet his burden of proof of eligibility for asylum, withholding of removal, or protection under the CAT.

The BIA also denied Daud's motion to remand to pursue adjustment of status based upon his marriage to a United States citizen.  The BIA held that the "the motion is not supported by clear and convincing evidence that the marriage is bona fide to overcome the presumption of marriage fraud that arises when a marriage occurs during proceedings."  This appeal followed.

IV.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252.  Where, as here, the BIA adopts, in part, the IJ's findings, we review the decision of the IJ, as well as any additional reasoning offered by the BIA.  Chen Yun Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002); Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

"Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard."  Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001); Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998).  Under this standard, the BIA's determination that Daud is not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006) (citing INS v. Elias-Zacarias,

-6-

502 U.S. 478, 481 (1992)).  It can be reversed only if the evidence presented would

*require* a reasonable factfinder to conclude that the requisite fear of persecution existed.

Elias-Zacarias, 502 U.S. at 481; Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005);

Abdille, 242 F.3d at 483-484 ("Under the substantial evidence standard, the BIA's

finding must be upheld unless the evidence not only supports a contrary conclusion, but

compels it.").  Adverse credibility determinations are findings of fact and, as such, are

likewise reviewed for substantial evidence.  Balasubramanrim v. INS, 143 F.3d 157, 161

(3d Cir. 1998); Chen Yun Gao, 299 F.3d at 272.

Under CAT, an applicant bears the burden of establishing by objective evidence

"that it is more likely than not that he or she would be tortured if removed to the proposed

country of removal."  Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting

Sevoian v. Ashcroft, 290 F.3d 166, 174-175 (3d Cir. 2002)); 8 C.F.R. § 1208.16(c)(2).

V.

Daud first raises two constitutional claims, both asserting violations of due

process.  Daud's first claim is that the transcription of his testimony at the February 25,

2004 hearing, and the IJ's oral decision of the same date, had so many mistakes and was

of such poor quality that it prevented the BIA from conducting a meaningful review of

the record.  Daud's second due process claim is that the removal proceedings against him

were commenced only as a result of his participation in the National Security Entry Exit

Registration System ("NSEERS").  Daud asserts that NSEERS, which imposes certain

"special" registration requirements upon foreign nationals of certain designated countries,

discriminates unconstitutionally on the basis of religion or national origin.[3]

The government argues that the court is without jurisdiction to consider these claims because they were never raised in the first instance before the BIA. Under 8 U.S.C. § 1252(d), "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." To exhaust a claim, an applicant must first raise the issue before the BIA, Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir. 1989); Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005), so as to give it "the opportunity to resolve a controversy or correct its own errors before judicial intervention." Zara v. Ashcroft, 383 F.3d 927, 931 (9th Cir. 2004).

However, exhaustion of administrative remedies is not always required when the petitioner advances a due process claim. Khan v. United States AG, 448 F.3d 226, 236 (3d Cir. 2006); Sewak v. INS, 900 F.2d 667, 670 (3d Cir. 1990); Vargas v. United States Dep't of Immigration & Naturalization, 831 F.2d 906, 908 (9th Cir. 1987) ("[D]ue process claims generally are exempt from [the exhaustion requirement] because the BIA does not have jurisdiction to adjudicate constitutional issues."); see also Bonhometre, 414 F.3d at 448 n.7.

Whether a given due process claim is subject to the exhaustion requirement is dependent on the nature of the asserted violation. A due process claim alleging a

---

[3]Daud's claim that NSEERS discriminates on the basis of religion is incorrect. For example, North Korea, a non-Islamic country, is subject to NSEERS while Turkey, a predominantly Islamic country, is not. NSEERS does, however, apply only to individuals of certain nationalities or places of origin.

procedural error that is correctable through the administrative process is fully subject to the exhaustion requirement. Khan, 448 F.3d at 236 ("[B]ecause this claim, stripped of its 'due process' label, is a claim of procedural error that could have been addressed by the BIA on appeal, the requirement that Khan exhaust remedies applies."); Bonhometre, 414 F.3d at 448 ("Mr. Bonhometre's procedural due process claims thus could have been argued before the BIA, and his failure to do so is thus fatal to our jurisdiction over this petition."); Sewak, 900 F.2d at 670. As explained in Vargas v. U.S. Dep't of Immigration & Naturalization, 831 F.2d 906 (9th Cir. 1987):

> [A] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process. "Due process" is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal.

Id. at 908.

Where, however, an alleged due process violation is a "fundamental constitutional claim" that the BIA is powerless to address, there is no exhaustion requirement, and the claim need not be raised in the first instance before the BIA. Hadayat v. Gonzales, 458 F.3d 659, 665 (7th Cir. 2006); Vargas, 831 F.2d at 908; Sewak, 900 F.2d at 670.

Here, Daud's claim that he was denied due process because the poor quality of the transcription of the proceedings before the IJ prevented the BIA from reviewing an accurate record "is a claim of procedural error that could have been addressed by the BIA on appeal." Khan, 448 F.3d at 236. Daud's failure to exhaust that claim by raising it in

his appeal to the BIA therefore precludes us from reviewing it.  8 U.S.C. § 1252(d).

Daud's due process claim regarding the unconstitutionality of the NSEERS program, however, is a "fundamental constitutional claim," Kandamar v. Gonzales, No. 05-2523, 2006 U.S. App. LEXIS 24261 (1st Cir. September 26, 2006); Hadayat, 458 F.3d at 665, that could not have been resolved by the administrative tribunal.  Accordingly, Daud's failure to exhaust his remedies as to this claim does not preclude us from reviewing it.[4]

VI.

Daud claims that the removal proceedings brought against him violate his constitutional rights under the Fifth Amendment because he came to the INS's attention only as a result of his registration in the NSEERS system which, Daud asserts, impermissibly discriminates on the basis of national origin.  NSEERS imposes certain

---

[4]The government also contends that, apart from the exhaustion requirement, Daud's failure to assert his constitutional claims to the BIA constitutes a waiver of those arguments.  See, e.g., In re Surrick, 338 F.3d 224, 237 (3d Cir. 2003) (holding that the failure to identify or argue an issue in an opening brief constitutes waiver of that argument on appeal); Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("[F]ailure to raise an issue in the district court constitutes a waiver of the argument.").

In the immigration context, however, this court has always identified the doctrine of waiver – i.e., failure to raise an argument before the BIA, with the exhaustion requirement of 8 U.S.C. § 1252(d).  See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir.2005) ("To exhaust a claim ... an applicant must first raise the issue before the BIA or IJ."); Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) ("[A]n alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim."); Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir.1989) (noting that the exhaustion requirement "bars consideration of particular questions not raised in an appeal to the Board").

-11-

"special registration" requirements upon non-immigrant aliens from certain, predominantly Arab or Islamic, countries. NSEERS requires such individuals to register and report to the INS 30 days after their arrival in this country and at certain specific intervals thereafter. See Registration and Monitoring of Certain Nonimmigrants, 67 Fed. Reg. 52584 (Aug. 12, 2002) (codified at 8 C.F.R. §§ 214.1(f), 264.1(f)); 67 Fed. Reg. 70526 (Nov. 22, 2006). The parties do not dispute that Pakistan is one of the countries designated under NSEERS. See 67 Fed. Reg. 77641, 77643 (December 18, 2002).[5]

Aliens in deportation proceedings are entitled to the equal protection safeguard contained within the Due Process Clause of the Fifth Amendment. Mathews v. Diaz, 426 U.S. 67, 77 (1976); Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) ("[P]etitioners in deportation proceedings enjoy Fifth Amendment Due Process protections."); DeSousa v. Reno, 190 F.3d 175, 184 (3d Cir. 1999)("It is undisputable that our constitution provides due process and equal protection guarantees to aliens as well as citizens."). However, in the immigration context, Congress and the Executive may, in at least some circumstances, draw classifications based upon an alien's nationality or place of origin.

As an initial matter, judicial review of classifications drawn by the political branches of government in the immigration context is extremely limited. See INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ( "[W]e have recognized that judicial

_____

[5]In December 2003, NSEERS's 30-day and annual re-registration requirements ceased. Individuals registered in NSEERS are now only required to appear for re-registration when deemed necessary by the Department of Homeland Security, which succeeded the INS in overseeing the program. See 68 Fed. Reg. 67577 (December 2, 2003).

deference to the Executive Branch is especially appropriate in the immigration context"

(citation omitted)); <u>Fiallo v. Bell</u>, 430 U.S. 787, 792 (1977) ("This Court has repeatedly

emphasized that 'over no conceivable subject is the legislative power of Congress more

complete than it is over' the admission of aliens."); <u>see also</u> <u>Diaz</u>, 426 U.S. at 79.

In <u>Harisiades v. Shaughnessy</u>, 342 U.S. 580 (1952), the Supreme Court explained

the reasons for the great deference afforded the political branches in matters relating to

aliens and immigration:

> [A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.

<u>Id.</u> at 588-89.

In the present case, Congress has granted the Attorney General broad powers in

setting special registration requirements applicable to specific sub-classes of aliens. 8

U.S.C.§ 1305 provides:

> The Attorney General may in his discretion, upon ten days notice, require the natives of any one or more foreign states, *or any class or group thereof*, who are within the United States and who are required to be registered under this title, to notify the Attorney General of their current addresses and furnish such additional information as the Attorney General may require (emphasis added).

<u>Id.</u>  <u>See also</u> <u>id.</u> § 1303(a) (authorizing the Attorney General to prescribe special

regulations and forms for the registration of "aliens of *any other class* not lawfully admitted to the United States for permanent residence") (emphasis added). These provisions unquestionably authorize the implementation of the NSEERS program here at issue.

Neither the Supreme Court nor this Court has yet decided on the appropriate standard of review for claims brought by aliens in immigration proceedings asserting that discrimination on the basis of national origin violates the equal protection guarantee of the Fifth Amendment. It is not necessary for us to decide this issue, however, because we hold that our jurisdiction to consider claims of selective enforcement based on national origin is foreclosed by <u>Reno v. American-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471 (1999). In that case, several aliens brought suit against the Attorney General alleging that they had been targeted for deportation because of their affiliation with the group Popular Front for the Liberation of Palestine, in violation of their Fifth Amendment rights. The Court held that it lacked jurisdiction to consider most selective-enforcement claims under 8 U.S.C. § 1252(g), which provides:

> Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

The Court rejected the aliens' argument that § 1252(g) must be read to permit review of their claims because failure to provide a forum for their selective-enforcement

-14-

claims would raise constitutional issues: "[A]n alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." American-Arab Anti-Discrimination Comm., 525 U.S. at 488; id. at 491-92 ("When an alien's continuing presence in this country is in violation of the immigration laws, the Government does not offend the Constitution by deporting him for the additional reason that it believes him to be a member of an organization that supports terrorist activity.") Here, Daud concedes that he overstayed his visa by more than two years and is therefore in this country unlawfully; it was for this reason that he was ordered removed. We therefore lack jurisdiction to consider Daud's Fifth Amendment claim.

Although the Court did not foreclose "the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome," id. at 491, the classifications drawn by the NSEERS program cannot in anyway be characterized as "outrageous." All other courts of appeals to consider the issue have held likewise. Kandamar, 2006 U.S. App. LEXIS 24261 at *21-22; Hadayat, 458 F.3d at 665 (7th Cir. 2006); Ahmed v. Gonzales, 447 F.3d 433, 439-40 (5th Cir. 2006); Ali v. Gonzales, 440 F.3d 678, 681 n.4 (5th Cir. 2006); Zafar v. AG, 461 F.3d 1357, 1367 (11th Cir. 2006). We therefore dismiss Daud's discrimination claim for lack of jurisdiction.

## VII.

Daud argues that the IJ and BIA erred on both grounds for denying his asylum application: his failure to file a timely application and on the merits. As to the timeliness

of Daud's asylum application, we hold that our jurisdiction to consider Daud's claims is foreclosed by 8 U.S.C. § 1158(a)(3). We also agree with the alternative finding of the IJ and BIA, that Daud has failed to meet his burden of proof, under the applicable standards, for asylum, withholding of removal, or protection under CAT.

Daud concedes that he filed his application for asylum more than one year late. 8 U.S.C. § 1158(a)(2)(B)(alien must demonstrate "by clear and convincing evidence that the [asylum] application has been filed within 1 year after the date of the alien's arrival in the United States."). He asserted before the IJ and BIA, however, that he falls within an exception to the filing deadline for "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Id. § 1158(a)(2)(D). Both the IJ and BIA rejected this argument.

Congress provided in 8 U.S.C. § 1158(a)(3) that "[n]o court shall have jurisdiction to review any determination of the Attorney General" under § 1158(a)(2) – i.e., with respect to the one-year filing deadline for asylum applications. See Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006). We are therefore without jurisdiction to disturb the BIA's holding that Daud's application is time-barred.

In any event, the record supports the IJ's and BIA's determination that Daud is not entitled to asylum, withholding of removal, or relief under CAT. As the IJ noted, Daud failed to provide any corroboration of the existence of Pakistan Khan or Daud's involvement in his arrest. Several material inconsistencies between Daud's testimony and his application cast further doubt upon the accuracy of his account. The adverse

-16-

credibility determination by the IJ and BIA is therefore supported by substantial evidence. Balasubramanrim, 143 F.3d at 161; Chen Yun Gao, 299 F.3d at 272.

Even if his testimony were believed, however, Daud would still not be eligible for relief, because he has not established a "well-founded fear of persecution," Abdille, 242 F.3d at 483, or that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." Zubeda, 333 F.3d at 471. None of the conduct Daud complains of – threats, being followed, entry into his home – give rise to a well-founded fear of persecution or suggest that he would be subject to torture if removed to Pakistan. Supported as they are by substantial evidence, the determinations of the IJ and BIA must be affirmed.

## VIII.

Daud also seeks review of the BIA's denial of his motion to remand to the Immigration Court to pursue adjustment of status based upon his marriage to a United States citizen. The BIA denied the motion because the marriage had taken place on May 17, 2004, during the pendency of removal proceedings, and could therefore not be the basis for adjustment of status unless upon a showing by "clear and convincing evidence to the satisfaction of the Attorney General" that the "marriage was not entered into for the purpose of procuring the alien's admission as an immigrant." 8 U.S.C. § 1255(e). The BIA held that Daud's motion was "not supported by clear and convincing evidence that the marriage is bona fide to overcome the presumption of marriage fraud that arises when a marriage occurs during proceedings."

-17-

The decision to grant or deny an adjustment of status pursuant to § 1255 is a discretionary one. Pinho v. Gonzales, 432 F.3d 193, 203 (3d Cir. 2005)("In the case of adjustment of status, an eligible immigrant may have his application denied within the discretion of the agency."). By its plain language, § 1252(a)(2)(B)(i) bars judicial review of such a discretionary decision. See id. ("Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255."); Zheng Zheng v. Gonzales, 422 F.3d 98, 111 (3d Cir. 2005). Therefore we are without jurisdiction to review Daud's challenge to the BIA's denial of discretionary relief unless he has presented a constitutional claim or a question of law under the REAL ID Act. § 1252(a)(2)(D). See Ng v. AG of the United States, 436 F.3d 392, 394 (3d Cir. 2006). Daud has presented no such claim or question.

Because we do not have jurisdiction over the BIA's denial of the relief Daud seeks – i.e., adjustment of status under § 1255, we also do not have jurisdiction to review the BIA's denial of his motion to remand to the Immigration Court to pursue that relief. Martinez-Maldonado v. Gonzales, 437 F.3d 679, 683 (7th Cir. 2006)("[W]e lack jurisdiction over motions to reopen and reconsider in cases where we lack jurisdiction to review the underlying order."); Rodriguez v. Ashcroft, 253 F.3d 797, 800 (5th Cir. 2001) ("It is axiomatic that if we are divested of jurisdiction to review an original determination of the Board that an alien has failed to establish that he would suffer extreme hardship if deported, we must also be divested of jurisdiction to review the Board's denial of a motion to reopen on the ground that the alien has still failed to establish such a

hardship."); <u>Sarmadi v. INS</u>, 121 F.3d 1319, 1322 (9th Cir. 1997) ("[W]here Congress explicitly withdraws our jurisdiction to review a final order of deportation, our authority to review motions to reconsider or to reopen deportation proceedings is thereby likewise withdrawn").

IX.

For the foregoing reasons, Daud's petition for review will be dismissed as to his constitutional claims with respect to faulty transcription and discrimination, the denial of his application for asylum, and the denial of his motion to remand, and will be denied as to his claims for withholding of removal and protection under the CAT.