# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  05-2924

_____

Charlyne Sokopy Aneyoue,                     *
                                             *
            Petitioner,                       *
                                             *   Petition for Review of an Order of the
      v.                                      *   Board of Immigration Appeals.
                                             *
Alberto Gonzales, Attorney General           *
of the United States of America,             *
                                             *
            Respondent.                       *

_____

Submitted:  February 16, 2007
     Filed:  February 23, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

      Charlyne Sokopy Aneyoue, a native and citizen of Liberia, applied for and was
denied asylum, withholding of removal, and relief under the Convention Against
Torture.  An Immigration Judge ("IJ") found that she had submitted a fraudulent
document and that her testimony lacked credibility.  She filed a Notice of Appeal with
the Board of Immigration Appeals ("the Board") and also asked the Board to reopen
her case, submitting new evidence that purported to cure the deficiencies noted by the
IJ.  The Board rejected her appeal and refused to reopen the case on the basis of the
newly submitted evidence because Aneyoue had not shown that it was previously

unavailable. Aneyoue moved for reconsideration of the denial of her motion to reopen, raising substantially identical arguments. The Board denied her motion for reconsideration, and Aneyoue petitions this court for review of the Board's decision not to reconsider its prior denial of her motion to reopen. We deny the petition.

## I. BACKGROUND

Charlyne Sokopy Aneyoue legally entered the United States at Baltimore in late 2000 on a visitor's visa. She overstayed the visa, and immigration authorities charged her as a removable alien. In response, Aneyoue applied for asylum, withholding of removal, and relief under the Convention Against Torture. After an interview with an asylum officer, in which the officer found that Aneyoue lacked credibility, she appeared before an IJ in Atlanta for an initial hearing in 2001. Following several extensions of time and a transfer of venue, she appeared before an IJ in Bloomington, Minnesota, for a hearing on the merits of her claims on October 27, 2003.

At the hearing, Aneyoue gave the following account. Before arriving in the United States, she lived in a village in Lofa County, Liberia, with her father. Her father was an ethnic Krahn, a group that suffered well-documented abuses at the hands of the Liberian government under the 1997-2003 regime of exiled President Charles Taylor. Though her parents often spoke the Krahn language at home, Aneyoue learned only English. In April of 2000, Liberian soldiers arrived in the village, firing weapons and accusing the Krahn residents of supporting rebels in Liberia's then-ongoing civil war. The soldiers came to her apartment house, told the residents that they were going to be executed, and ordered the residents to follow them. Aneyoue's father asked them to spare his daughter's life, and the soldiers shot and killed him in response. The commander and one or two men then took Aneyoue behind the building and proceeded to beat and rape her.

A week or two later, Aneyoue exhibited the symptoms of a sexually transmitted infection and traveled to St. Joseph Catholic Hospital in Monrovia for treatment. While in Monrovia, she received a message from a friend in the village warning her that the soldiers had returned to the village and had inquired about her. She spent some months saving money, then flew to the United States with a passport that she obtained shortly before the violence in her village. She said she feared returning to Liberia because she is worried that Taylor and his forces may come back to the country.

Aside from her testimony, Aneyoue's only other evidence of the incident was a purported medical record from St. Joseph indicating that doctors had treated her for injuries consistent with rape. The document stated that doctors initially examined her on July 16, 2000, which contradicted her testimony that she was raped in April of 2000 and went to the hospital within two weeks after the incident. A government investigation also showed the document to be fraudulent. The investigator contacted the hospital administrator at St. Joseph, who stated that the hospital had no record of treating Aneyoue, no record of the doctor whose supposed signature appears on the medical record, and that the document itself was not authentic: St. Joseph used different stationery than the document, as well as a different seal of authenticity. In addition, the investigator noted that the document was clearly generated on a computer, while most clinics in Liberia at the time used manual typewriters due to a lack of electricity. The government served a copy of this investigative report upon counsel for Aneyoue on September 12, 2002, and that same counsel represented Aneyoue at the merits hearing more than a year later.

Despite having notice of the document's flaws well in advance of her hearing, Aneyoue had not withdrawn the purported medical record from evidence and had no explanation for its apparent lack of authenticity. She claimed she asked her uncle in Liberia to obtain the record for her; after receiving notice that it may be fraudulent, she attempted to call her uncle but took no other steps to resolve the matter.

This and other inconsistencies (such as the fact that she could not speak a word of the Krahn language despite allegedly growing up in a household where it was spoken openly), as well as Aneyoue's inability to give particular details surrounding the alleged violence in April of 2000, led the IJ to find that Aneyoue was not credible and the purported medical record was fraudulent. These findings left Aneyoue without solid evidence to support her claims for relief, and the IJ denied those claims. The IJ also found that Aneyoue's application for asylum was frivolous, thus rendering her permanently ineligible for immigration benefits. 8 U.S.C. § 1158(d)(6).

Aneyoue filed a notice of appeal with the Board, indicating that she intended to file a brief in support of the appeal. Rather than submitting a brief, however, she filed a "Motion to Reopen and Remand" with attached evidence, including an affidavit stating that she had located a witness to the rape (the friend who warned her against returning to the village) and a second hospital record showing that she registered at the JFK Medical Center on May 10, 2000, and told her treating physician that she had been the victim of rape. The Board adopted the factual findings of the IJ and affirmed the decision, holding that the record supported the IJ's adverse credibility finding. It also denied Aneyoue's motion to reopen and remand the case on the basis of new evidence, because she did not show that the evidence "was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Aneyoue filed a subsequent motion to reconsider this decision of the Board, this time attaching an affidavit from the alleged witness who attested to the events described in Aneyoue's testimony. The Board denied that motion as well, noting that it was "not persuaded by the respondent's contentions that our prior decision was either legally, or factually, erroneous."

## II. DISCUSSION

Aneyoue appeals the denial of her motion for reconsideration to this court, arguing that the Board should have reopened and remanded her case due to her

submission of new evidence. Aneyoue argues that this evidence removes the grounds for an adverse credibility finding and therefore enables her to show her eligibility for asylum.

Although Aneyoue appeals only the denial of her motion for reconsideration, and not the Board's denial of her motion to reopen, "our review of the denial of the motion to reconsider may require us to consider the validity of [the underlying] order." De Jimenez v. Ashcroft, 370 F.3d 783, 789 (8th Cir. 2004). Motions for reconsideration before the Board must "specify[] the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). Motions to reopen must state "new facts," and an alien must show that the "evidence sought to be offered is material and was not available . . . at the former hearing." 8 C.F.R. § 1003.2(c)(1). We review the Board's denial of a motion for reconsideration for abuse of discretion. Habchy v. Gonzales, 471 F.3d 858, 861 (8th Cir. 2006). We find no such abuse of discretion in this case.

First, with regard to the new, purportedly genuine medical records, Aneyoue points to no legal or factual error in the Board's finding that she failed to prove that the records were previously unavailable. Aneyoue presumably had notice that the original record was fraudulent when she received it, because it stated that she was treated more than two months later than she claimed. Even if she overlooked that date on the record, she had notice that there were serious questions as to its authenticity when the government served its investigative report upon her attorney more than one year before her hearing. Aneyoue's motion to reconsider states that she "made diligent effort[s] to obtain the new hospital documents at the earliest possible time," but this assertion plainly contradicts prior testimony that she merely "tried one time to contact [her] uncle" after receiving notice of the government investigation. She also argues that Liberia was undergoing a civil war at the time, making communication difficult. Given her failure to make adequate effort at communication after notice of the fraud, however, we cannot say that the Board abused its discretion

in finding no factual or legal error in its prior ruling; that is, in finding that Aneyoue failed to prove that the second medical record was previously unavailable.

The same argument applies to the evidence of the alleged witness. Aneyoue had notice that her credibility would be at issue upon her receipt of the government's investigative report. She had more than a year to submit evidence in an effort to buttress her credibility prior to the hearing, and she failed to do so. Even if the affidavit from the witness was previously unavailable, the Board's denial of Aneyoue's motion to reopen alternatively held that this new evidence would not be material to the adverse credibility finding within the meaning of 8 C.F.R. § 1003.2(c)(1), absent a stronger showing of the authenticity of the affidavit. Considering the specific grounds for finding adverse credibility in her case, including her submission of a document despite compelling reasons to believe it was a forgery, we do not believe the Board abused its discretion in failing to find any legal or factual error in this ruling.

In essence, Aneyoue's sole argument on appeal amounts to the assertion of a post-hearing right to rehabilitate her credibility. To the extent such a right exists—and Aneyoue cites no authority suggesting that it does—we hold that it would not apply when an alien has more than one year's notice prior to a hearing that a document is fraudulent, and she fails to take any substantial steps to rectify or explain the alleged fraud during that time.

## III. CONCLUSION

For the foregoing reasons, the Board did not abuse its discretion in denying Aneyoue's motion for reconsideration. Therefore, we deny the petition for review.

————————