# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3713

_____

Pedro Olea Camacho

*Petitioner*

v.

Matthew G. Whitaker, Acting Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 26, 2018
Filed: December 6, 2018

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Pedro Olea Camacho petitions for review of the Board of Immigration Appeals's ("BIA") denial of his motion to reconsider the BIA's previous order denying him a discretionary adjustment of status. We deny the petition.

## I.     Background

Pedro Olea Camacho is a Mexican citizen who first entered the United States without inspection in 1987. He has been married twice since entering the country. He adjusted his status to lawful permanent resident on December 7, 2000, on the basis of his first marriage. During his application process for adjustment of status, Camacho failed to disclose that he was convicted of fifth-degree theft in Iowa on September 17, 1993.

In March of 2015, Camacho was convicted in Iowa of two counts of indecent contact with a child. The charges related to alleged sexual misconduct between 1999 and 2002. The victims were the grandchildren of his first wife. Camacho pled guilty to both counts. Following Camacho's conviction, the Department of Homeland Security ("DHS") served Camacho a Notice to Appear charging him with removability under: 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony (his sexual abuse of a child conviction); § 1227(a)(2)(E)(i), as an alien convicted of a crime of domestic violence; § 1227(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude; and § 1227(a)(1)(A), as an alien who obtained admission via fraud in 2000 by failing to disclose his 1993 theft conviction. Camacho responded by disputing his prior conviction for theft and denying all grounds for removability. On May 26, 2015, the Immigration Judge ("IJ") issued a decision finding Camacho removable as an alien convicted of an aggravated felony. Camacho then applied to adjust status through his second wife (a US citizen), and sought a waiver of his inadmissibility.

At the hearing to evaluate Camacho's application, Camacho testified that he was innocent of the underlying conduct of indecent contact with a child. Camacho explained that he pled guilty to the charges in order to avoid the possibility of a lengthy mandatory minimum sentence if convicted at trial, but that he had not actually

engaged in the alleged activity. He said the charges were the result of a plot by his ex-wife to frame him. Other members of his community testified to his good character.

The IJ granted Camacho's application, finding that Camacho merited a favorable exercise of discretion. The IJ acknowledged that ordinarily a conviction for sexual abuse of a minor would weigh heavily against granting discretionary relief. However, the IJ found that Camacho's testimony and that of his witnesses "render[ed] the conduct underlying the [sexual contact] conviction dubious." As a result, the IJ announced he would not afford the conviction its ordinary "full adverse weight."

Neither would the IJ ignore the conviction. Testimony elicited by the government suggested that one of Camacho's victims had attempted suicide following the alleged sexual misconduct. In particular, Camacho's wife acknowledged the attempted suicide during her testimony:

> Q: What happened was one of the victims tried to kill herself, right?
>
> A: Uh-huh.

The IJ did not directly quote Ms. Camacho's testimony. The IJ explained, however, that testimony mentioning an "apparent suicide attempt by one of the victims in concert with the accusations" led him to consider the conviction (while still giving it less weight to account for the possibility that Camacho was innocent). The IJ found that the other equities, including Camacho's long ties to his community and family, merited relief. The IJ also considered the possibility that Camacho's wife could commit suicide if the pair were separated, writing that "the potential suicide that completes this analysis balances the alleged suicide that began it."

DHS successfully appealed the grant of discretionary relief to the BIA. The BIA found that the IJ, in crediting testimony suggesting that Camacho may not have committed his crime, impermissibly went "behind a record of conviction to reassess [Camacho's] ultimate guilt or innocence." Matter of Roberts, 20 I. & N. Dec. 294, 301 (B.I.A. 1991) (citing Matter of Edwards, 20 I. & N. Dec. 191 (B.I.A. 1990)). The BIA considered Camacho's denial of the underlying conduct a *negative* factor weighing against relief, as it demonstrated that he had failed to take responsibility for his misconduct. The BIA also "found significant" that one of Camacho's victims "attempted suicide following this offense." The BIA concluded that Camacho was not entitled to a discretionary grant of adjustment of status.

Camacho filed a motion asking the BIA to reconsider its decision. In particular, Camacho argued that the BIA's statement that one of his victims "attempted suicide following this offense" was not supported by the IJ's fact-finding and that the BIA had violated the clear error standard of review. See 8 C.F.R. §§ 1003.1(d)(3)(i) and (iv). The BIA denied the motion. The BIA disagreed that its original order committed error in stating that one of Camacho's victims attempted suicide, citing the IJ's discussion of testimony relating to the suicide attempt, as well as Camacho's testimony. This petition followed.

## II.    Discussion

We ordinarily do not possess jurisdiction "to review discretionary denials of adjustment of status, unless the petition for review raises a constitutional claim or question of law." Hailemichael v. Gonzales, 454 F.3d 878, 886 (8th Cir. 2006) (citing 8 U.S.C. § 1252(a)(2)(B)(i),(ii) and (a)(2)(D)). However, we "have held repeatedly that we have jurisdiction to review the denial of a motion to reconsider even when we lack jurisdiction to review the denial of the underlying motion." Averianova v. Holder, 592 F.3d 931, 935 (8th Cir. 2010); see also Al Milaji v. Mukasey, 551 F.3d 768, 773-74 (8th Cir. 2008). Our precedent compels the conclusion that we have

jurisdiction to review Camacho's petition, even though: 1) our review may "require us to consider the validity of [the underlying] order," <u>Al Milaji</u>, 551 F.3d at 774 (alteration in original) (internal quotation mark omitted) (quoting <u>Aneyoue v. Gonzales</u>, 478 F.3d 905, 907 (8th Cir. 2007)), and, 2) we are statutorily barred from reviewing the factual claims in the underlying order in this case, which involves discretionary relief.[1] <u>See</u> 8 U.S.C. § 1252(a)(2)(B)(i).

We review the agency's denial of a motion to reconsider for an abuse of discretion. <u>Al Milaji</u>, 551 F.3d at 774 (citing <u>Aneyoue</u>, 478 F.3d at 907). When reviewing the denial of a motion to reconsider, "we will find an abuse of discretion if the denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis (such as race)." <u>Boudaguian v. Ashcroft</u>, 376 F.3d 825, 828 (8th Cir. 2004) (quoting <u>Zhang v. INS</u>, 348 F.3d 289, 293 (1st Cir. 2003)). To satisfy the requirement to offer a "rational explanation," the BIA need not revisit in detail every issue raised concerning the original order. <u>See</u> <u>Averianova</u>, 592 F.3d at 936 (quoting <u>Barragan–Verduzco v. INS</u>, 777 F.2d 424, 426 (8th Cir. 1985)) (explaining that the BIA has "no duty to write an exegesis on every contention"). Instead, the BIA's obligation is to "consider the issues raised and

---

[1]In <u>Averianova</u> we noted that the circuits are split on this issue. 592 F.3d at 935 n.5 ("*Compare Martinez–Maldonado v. Gonzales*, 437 F.3d 679, 683 (7th Cir. 2006) ("[W]e lack jurisdiction over motions to reopen and reconsider in cases where we lack jurisdiction to review the underlying order."), *Daud v. Gonzales*, 207 Fed.Appx. 194, 204 (3d Cir. 2006) (unpublished) (same), *Santos–Salazar v. DOJ*, 400 F.3d 99, 103 (2d Cir. 2005), *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004), *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1262 (11th Cir. 2003), and *Sarmadi v. INS*, 121 F.3d 1319, 1322 (9th Cir. 1997), *with Onwuamaegbu v. Gonzales*, 470 F.3d 405, 406-07 (1st Cir. 2006) (reviewing the BIA's denial of a motion for reconsideration even though the court lacked jurisdiction to review the underlying order), and *Stone v. INS*, 13 F.3d 934, 935 (6th Cir. 1994) ("While we have no jurisdiction to review the underlying deportation order, we do have jurisdiction to determine whether the Board abused its discretion in denying the petitioner's motion to reconsider the order."), *aff'd on other grounds*, 514 U.S. 386 (1995).").

announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Camarillo-Jose v. Holder, 676 F.3d 1140, 1143 (8th Cir. 2012) (internal quotation mark omitted) (quoting Averianova, 592 F.3d at 936).

We conclude that the BIA satisfied its obligation to provide a "rational explanation" for its original decision to deny Camacho relief when it denied Camacho's motion to reconsider.[2] In the BIA's original consideration of DHS's appeal it was required to review for clear error findings of fact, including determinations of credibility, made by the Immigration Judge. 8 C.F.R. § 1003.1(d)(3)(i). The BIA could review *de novo* issues of law, judgment, and discretion. 8 C.F.R. § 1003.1(d)(3)(ii).

The BIA's explanation that it did not violate the clear error standard of review in its weighing of the attempted suicide of one of Camacho's victims qualifies as a "rational explanation." It is important to remember that the IJ balanced two considerations when deciding the weight he would afford Camacho's conviction: 1) the IJ's doubts that the underlying charges were true, and 2) testimony suggesting that one of Camacho's victims attempted suicide "in concert with" the allegations. The IJ explicitly admitted that the testimony concerning the attempted suicide would weigh into his consideration of the equities, so that he would not "ignore" the conviction. At the same time, the IJ stated that he was unsure the sexual misconduct had, in fact, occurred. Read in context, the only plausible conclusion that can be

---

[2]The dissent suggests that the BIA committed an abuse of discretion by "inexplicably departing from established policies" that prohibit additional fact-finding and require the BIA to apply the clear error standard when reversing findings of fact. See 8 C.F.R. § 1003.1(d)(3)(i), (iv). Our conclusion that the BIA did not engage in fact-finding (since the IJ explicitly noted that he was considering Camacho's conviction because of testimony regarding an alleged suicide attempt) means that it also did not depart from an established policy.

drawn from the IJ's analysis is that he partially credited testimony regarding the existence of the attempt but was unsure how much weight to give it in his analysis, given his underlying suspicion that Camacho had not actually committed the offense.

However, the IJ was not entitled to go behind Camacho's record of conviction to reassess his "ultimate guilt or innocence" (as the BIA correctly pointed out when considering DHS's appeal). See Roberts, 20 I. & N. Dec. at 301 (citing Edwards, 20 I. & N. Dec. 191); see also Trench v. INS, 783 F.2d 181, 184 (10th Cir. 1986) (quoting Zinnanti v. INS, 651 F.2d 420, 421 (5th Cir. 1981)) ("Immigration authorities must look solely to the judicial record of final conviction and may not make their own independent assessment of the validity of [a] guilty plea."). Removing the possibility that Camacho was innocent of the underlying offense immediately alters the "balancing" the IJ performed regarding the conviction. When evaluating the IJ's initial finding of facts, the BIA could correctly reject the IJ's suppositions regarding whether the offense occurred as erroneous as a matter of law. At the same time, the BIA was entitled to weigh other facts—including the evidence regarding the attempted suicide—that the IJ relied on in conducting his analysis. Furthermore, the BIA could give greater weight to those facts in its *de novo* review than the IJ had in his original review. See 8 C.F.R. § 1003.1(d)(3)(ii).

The BIA's order denying Camacho's motion to reconsider directly addressed the question of sufficiency of the evidence regarding the suicide attempt and whether the BIA violated the clear error standard. In response to Camacho's arguments, the BIA cited the portion of its original order explaining why it weighed the conviction and its attendant circumstances differently than the IJ had in his original review, along with record testimony on that subject. While brief, the BIA's explanation is "rational" and reveals that it sufficiently considered the issues raised by Camacho. See Camarillo-Jose, 676 F.3d at 1143 (quoting Averianova, 592 F.3d at 936). To the extent Camacho now raises other issues related to the factual equities surrounding his

case, the BIA previously provided a sufficient explanation of why it viewed the equities as meriting a denial of discretionary relief.

### III.    Conclusion

We deny the petition for review.

KELLY, Circuit Judge, dissenting.

I agree that our jurisdiction is limited to a review of the BIA's denial of Camacho's motion to reconsider, Averianova, 592 F.3d at 935, which we review for an abuse of discretion, Aneyoue, 478 F.3d at 907.  An abuse of discretion may be found where "a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim."  Habchy v. Gonzales, 471 F.3d 858, 861–62 (8th Cir. 2006) (quoting Hernandez-Moran v. Gonzales, 408 F.3d 496, 499 (8th Cir. 2005)).

While the court's opinion discusses whether the BIA provided a sufficient "rational explanation" for its decision, it fails to address Camacho's argument that the BIA departed from established policy by engaging in factfinding on appeal.  The regulations governing the scope of the BIA's review prohibit it from overturning facts found by the IJ, except upon clear error, or from engaging in any additional factfinding.  8 C.F.R. § 1003.1(d)(3)(i), (iv).  If additional factfinding is needed, the BIA must remand the case to the IJ.  Id. § 1003.1(d)(3)(iv); see Waldron v. Holder, 688 F.3d 354, 360–61 (8th Cir. 2012) (granting petition for review based on BIA's impermissible factfinding); Padmore v. Holder, 609 F.3d 62, 68–69 (2d Cir. 2010) (per curiam); Nabulwala v. Gonzales, 481 F.3d 1115, 1119 (8th Cir. 2007).

Weighing heavily in the BIA's analysis was its conclusion that Camacho's 2015 indecent contact offense "only came to light after one of his victims attempted to commit suicide." As the court acknowledges, the BIA's finding that Camacho's actions caused one of his victims to attempt suicide was "significant" to the BIA's overall determination of Camacho's case. But the IJ made no factual findings about the alleged suicide attempt. The IJ simply stated: "[T]estimony mentioned an apparent suicide attempt by one of the victims in concert with the accusations leveled against [Camacho]." This is not a factual finding, much less a finding that Camacho's actions caused a suicide attempt. Indeed, the IJ's choice of language—later referring to the "alleged" suicide attempt—suggests a deliberate effort to *avoid* making a finding on this issue.[3]

The alleged suicide attempt was mentioned only twice at the hearing. The IJ likely avoided evaluating this testimony because it was so limited and unreliable. Camacho was asked, "Do you remember in your criminal case that they told that story after [the victim] attempted suicide?" To which he replied, "I don't remember that, because when I went to court, that's when they told me everything. That's it." Camacho's current wife, Ms. Olea, was also asked about the victim's apparent suicide attempt. Although Ms. Olea acknowledged that she had heard about the apparent suicide attempt, she "wasn't there" to hear the child's allegations firsthand so only reported what she had heard from others. Even if it were proper for the BIA to engage in factfinding, its conclusion would not have been supported by the evidence.

---

[3]I respectfully disagree with the court's statement that "the IJ explicitly noted that he was considering Camacho's conviction because of testimony regarding an alleged suicide attempt." What the IJ said was that, although "credible testimony renders the conduct underlying the conviction dubious," this mitigating evidence only "damaged the weight the [IJ] would otherwise give to such a serious conviction," and was not sufficient to "persuade the [IJ] to ignore the conviction" entirely. The IJ said nothing about whether the suicide attempt allegation factored into its analysis of Camacho's conviction. As noted above, the IJ made no factual finding at all about the alleged suicide attempt.

On reconsideration, the BIA stated simply that the record supported its finding "that one of [Camacho's] victims attempted suicide following his offense." This unsupported factual finding was not made by the IJ, violating 8 C.F.R. § 1003.1(d)(3). Nonetheless, the BIA afforded the fact significant weight in overturning the IJ's decision. The BIA's failure to correct its improper factfinding on reconsideration constitutes a departure from established policies and an abuse of discretion. See Waldron, 688 F.3d at 361.

Because I would grant Camacho's petition, I respectfully dissent.

_____