# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3167

_____

| | | |
|---|---|---|
| Oksana Averianova, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review from the |
| v. | * | Board of Immigration Appeals. |
| | * | |
| Eric H. Holder, Jr.,[1] Attorney | * | |
| General of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 20, 2009
Filed: January 28, 2010

_____

Before RILEY, HANSEN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Oksana Averianova entered the United States on a temporary visa in January 1996, but she remained here unlawfully after her visa expired. She applied for asylum, and the former Immigration and Naturalization Service ("INS")[2] initiated

---

[1]Eric H. Holder, Jr., became the Attorney General on February 3, 2009, and is automatically substituted as respondent under Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

[2]The INS ceased to exist on March 1, 2003, and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

removal proceedings. On November 30, 2004, an Immigration Judge ("IJ") found Averianova removable and denied her application for asylum, withholding of removal, and protection under the Articles of Convention Against Torture ("CAT"). The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision, and we denied her petition for review. *See Averianova v. Mukasey*, 509 F.3d 890 (8th Cir. 2007). On June 19, 2007, Averianova filed a motion to reopen removal proceedings based on her family situation, which the BIA denied. On April 14, 2008, Averianova filed a motion to reconsider the BIA's denial of her initial motion to reopen and a second motion to reopen removal proceedings, this time based on changed country conditions. The BIA denied these motions on August 25, 2008, and Averianova now petitions for review.

## I.    BACKGROUND

On November 29, 1995, Averianova, a native and citizen of Uzbekistan, filed an application for a non-immigrant visa to visit the United States. Averianova averred that she intended to visit the United States for one month, that she did not have any relatives in the United States, and that neither she nor anyone on her behalf had ever expressed to a U.S. immigration official an interest in immigrating to the United States. The State Department approved Averianova's application, and she entered the United States in January 1996 with a temporary visa. Averianova remained in the United States unlawfully after her visa expired on July 25, 1996.

In May 1999, nearly three years after her visa expired, Averianova applied for asylum. Contradicting her 1995 visa application, Averianova admitted that her mother had been in the United States since 1991 and that she had listed Averianova as a derivative beneficiary on a 1993 asylum application. Averianova claimed that she fled Uzbekistan to escape persecution on account of her Jewish ethnicity and religion and that she feared returning to Uzbekistan. She described several instances of alleged persecution in Uzbekistan, including being taunted and beaten at school. Averianova

-2-

also claimed that her family was continually harassed and threatened for being Jewish. She submitted no evidence to corroborate these claims.

On August 25, 1999, an asylum officer interviewed Averianova about her asylum application. The officer found Averianova's testimony "vague, inconsistent, and unbelievable," and the INS referred her asylum application to an IJ and initiated removal proceedings. During her removal proceedings, which commenced on February 4, 2000, Averianova renewed her application for asylum and withholding of removal and sought protection under the CAT. Averianova submitted several documents, including an alleged birth certificate, to establish her Jewish ethnicity. The INS investigated the contents of these documents and determined that they were fraudulent. *See Averianova*, 509 F.3d at 893-94 (describing the fraudulent documents).

On November 30, 2004, after holding several evidentiary hearings, the IJ denied Averianova's application for asylum, withholding of removal, and protection under the CAT, and ordered her removed to Uzbekistan. The IJ found that Averianova failed to corroborate any of her claims of persecution and harassment and concluded that she was not credible because she had submitted fraudulent documents in an attempt to establish that she was Jewish. The BIA adopted and affirmed the IJ's decision, and we denied Averianova's petition for review. *See id.* at 895 ("The combination of an adverse credibility finding and a lack of corroborating evidence for the claim of persecution means that the applicant's claim fails, 'regardless of the reason for the alleged persecution.'" (quoting *Sivakaran v. Ashcroft*, 368 F.3d 1028, 1029 (8th Cir. 2004))).

On June 19, 2007, Averianova filed a motion to reopen removal proceedings. She argued that reopening was warranted because her husband had become a U.S. citizen and had applied for a visa that, if approved, would allow her to apply for

adjustment of status.[3]  Because her motion was untimely, Averianova asked the BIA to exercise its discretion to reopen the case sua sponte.  The BIA declined to reopen the case sua sponte and denied Averianova's motion on March 7, 2008.

On April 14, 2008, Averianova filed a motion with the BIA entitled, "Motion for Reconsideration & Motion to Reopen Removal Proceedings Due to Changed Country Conditions."  The BIA treated this motion as two separate motions:  one seeking reconsideration of its previous denial of Averianova's motion to reopen and another seeking to reopen under 8 C.F.R. § 1003.2(c)(3)(ii) based on changed country conditions.[4]  On August 25, 2008, the BIA denied both motions on their merits. Averianova petitions for review of the denial of her motion to reconsider and second motion to reopen.

## II.    DISCUSSION

We first consider whether we have jurisdiction to review the BIA's denial of Averianova's motion to reconsider its denial of her initial motion to reopen.  We held in *Tamenut v. Mukasey*, 521 F.3d 1000 (8th Cir. 2008) (en banc) (per curiam), that "the decision whether to reopen removal proceedings *sua sponte* is committed to the BIA's discretion by law . . . [and] we lack jurisdiction to review the agency's discretionary decision," *id.* at 1001 (internal citation omitted).  Thus, because Averianova's initial motion to reopen sought relief under the BIA's discretionary authority to reopen removal proceedings sua sponte, we would not have jurisdiction to review the BIA's denial of that motion.  This does not, however, deprive us of jurisdiction to review the denial of Averianova's motion to reconsider.  We have held repeatedly that we have jurisdiction to review the denial of a motion to reconsider

---

[3]Averianova married Vladimir Kashirsky, an asylee of Uzbekistan, on September 2, 2000.

[4]For the sake of clarity, we will also treat Averianova's April 14, 2008 motion as two separate motions.

even when we lack jurisdiction to review the denial of the underlying motion. *See, e.g., Al Milaji v. Mukasey*, 551 F.3d 768, 773-74 (8th Cir. 2008); *Esenwah v. Ashcroft*, 378 F.3d 763, 765 (8th Cir. 2004) (holding that "review of the denial of a motion for reconsideration does not mean the court has exercised jurisdiction over the BIA's underlying [order]" because the orders "remain separate and distinct"); *De Jimenez v. Ashcroft*, 370 F.3d 783, 789 (8th Cir. 2004).[5]

Although we have jurisdiction to review the BIA's denial of Averianova's motion to reconsider, the Government argues that Averianova waived this claim by failing to discuss it in her opening brief. In her reply brief, Averianova asserts that she challenged the BIA's denial of her motion to reconsider on pages forty to forty-three of her opening brief. These pages contain Averianova's argument that the BIA abused its discretion in denying her second motion to reopen because it failed to analyze her evidence of changed circumstances in Uzbekistan. Averianova's discussion of the motion to reconsider is limited to a conclusory assertion that the BIA's failure to analyze her evidence of changed country conditions also means that the BIA abused its discretion in denying her motion to reconsider. However, Averianova's initial

---

[5]The circuits are split on the question of whether they have jurisdiction to review the denial of a motion to reconsider where they lack jurisdiction to review the denial of the underlying order. *Compare Martinez-Maldonado v. Gonzales*, 437 F.3d 679, 683 (7th Cir. 2006) ("[W]e lack jurisdiction over motions to reopen and reconsider in cases where we lack jurisdiction to review the underlying order."), *Daud v. Gonzales*, 207 Fed. Appx. 194, 204 (3d Cir. 2006) (unpublished) (same), *Santos-Salazar v. U.S. Dep't of Justice*, 400 F.3d 99, 103 (2d Cir. 2005), *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004), *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1262 (11th Cir. 2003), *and Sarmadi v. INS*, 121 F.3d 1319, 1322 (9th Cir. 1997), *with Onwuamaegbu v. Gonzales*, 470 F.3d 405, 406-07 (1st Cir. 2006) (reviewing the BIA's denial of a motion for reconsideration even though the court lacked jurisdiction to review the underlying order), *and Stone v. INS*, 13 F.3d 934, 935 (6th Cir. 1994) ("While we have no jurisdiction to review the underlying deportation order, we do have jurisdiction to determine whether the Board abused its discretion in denying the petitioner's motion to reconsider the order."), *aff'd on other grounds*, 514 U.S. 386 (1995).

motion to reopen sought relief based on her changed personal circumstances, not changed circumstances in Uzbekistan. Consequently, whether the BIA considered Averianova's evidence of changed country conditions is irrelevant to the denial of her motion to reconsider, which sought review of the BIA's denial of Averianova's initial motion to reopen. Because Averianova provides no meaningful argument in her opening brief to support her claim that the BIA abused its discretion in denying her motion to reconsider, we decline to consider this claim. *See Mambwe v. Holder*, 572 F.3d 540, 550 n.7 (8th Cir. 2009); *see also Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004); *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003).

We now turn to the BIA's denial of Averianova's second motion to reopen. Generally, an alien may file only one motion to reopen removal proceedings. 8 C.F.R. § 1003.2(c)(2). However, an alien may file a second motion to reopen if she shows "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Id.* at § 1003.2(c)(3)(ii).

"Because motions to reopen are disfavored, . . . we review the BIA's decision regarding changed country conditions under a highly deferential abuse of discretion standard." *Li Yun Lin v. Mukasey*, 526 F.3d 1164, 1165 (8th Cir. 2008) (per curiam) (citing *Zhong Qin Zheng v. Mukasey*, 523 F.3d 893, 894 (8th Cir. 2008)). The BIA abuses its discretion if its "decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where [it] fails to consider all factors presented by the alien or distorts important aspects of the claim." *Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997) (citing *Nyonzele v. INS*, 83 F.3d 975, 979 (8th Cir. 1996)). To support her motion to reopen based on changed circumstances in Uzbekistan, Averianova filed numerous documents, including news articles and State Department country reports. In denying her motion to reopen, the BIA concluded, "We . . . find that the applicant's motion

does not qualify for the changed country conditions exception set forth at 8 C.F.R. § 1003(c)(3)(ii). Thus, we find that the applicant has not demonstrated changed conditions in Uzbekistan that would excuse the untimely filing of her second motion." Averianova argues that the BIA abused its discretion and violated the Due Process Clause by failing to meaningfully consider and discuss her evidence of changed country conditions.

We have held that the BIA must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Kipkemboi v. Holder*, 587 F.3d 885, 891 (8th Cir. 2009) (quoting *Rodriguez-Rivera v. INS*, 993 F.2d 169, 170 (8th Cir. 1993) (per curiam)). We have also held that "[i]t is not necessary for the BIA to list every possible positive and negative factor in its decision," *Rodriguez-Rivera*, 993 F.2d at 170-71, and that the BIA has "no duty to write an exegesis on every contention," *Barragan-Verduzco v. INS*, 777 F.2d 424, 426 (8th Cir. 1985) (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142 (5th Cir. 1985)). Moreover, "the Board is entitled to a presumption of regularity." *Makonnen v. INS*, 44 F.3d 1378, 1384 (8th Cir. 1995) (citation and internal quotation marks omitted); *see also Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005) ("Agency action is entitled to a presumption of regularity, and it is the petitioner's burden to show that the BIA did not review the record when it considered the appeal.").

In this case, Averianova's motion to reopen was number-barred, but she argued to the BIA that it should consider her motion based on her evidence of changed circumstances. The BIA specifically concluded that Averianova did not demonstrate changed conditions in Uzbekistan, so it denied her motion to reopen. "While the BIA must consider . . . evidence [of changed circumstances], it may do so in summary fashion without a reviewing court presuming that it has abused its discretion." *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006). Because Averianova "has failed to come forth with any facts showing that the BIA . . . [made] its decision without" adequately considering her evidence of changed circumstances in

Uzbekistan, we cannot conclude that the BIA abused its discretion or violated her due process rights when it denied her motion to reopen. *See Rodriguez-Rivera*, 993 F.2d at 171; *see also Albathani v. INS*, 318 F.3d 365, 379 (1st Cir. 2003) (suggesting that summary affirmance by the BIA does not "establish that the required review is not taking place"); *Kaczmarczyk v. INS*, 933 F.2d 588, 595 (7th Cir. 1991) ("[T]he burden is on the petitioners to convince us that the BIA gave short shrift to the evidence they presented.").

Averianova also argues that it is not clear whether "changed circumstances" under § 1003.2(c)(3)(ii) can include a petitioner's changed personal circumstances in the United States or whether it is limited to changed circumstances in a petitioner's country of nationality or in the country to which removal has been ordered. According to Averianova, because the phrase, "changed circumstances," has various meanings in different regulations, she lacked notice that "changed circumstances" under § 1003.2(c)(3)(ii) refers exclusively to changed country conditions. She argues that the ambiguity in the regulation "is a clear example" of a due process violation. We reject this argument. The regulation unambiguously states that an applicant must show "changed circumstances *arising in the country of nationality or in the country to which deportation has been ordered*," *id.* (emphasis added), and we have previously held that motions to reopen based on § 1003.2(c)(3)(ii) cannot be premised on changed personal circumstances arising from conditions outside the country of feared persecution, *Zhong Qin Zheng*, 523 F.3d at 895.

Finally, Averianova argues that the limitation of "changed circumstances" to changed country conditions violates the Equal Protection Clause. "To establish an equal protection violation, [Averianova] must identify a class of similarly situated persons who are treated dissimilarly." *See Geach v. Chertoff*, 444 F.3d 940, 945 (8th Cir. 2006). Averianova argues that aliens who are not subject to a final order of removal that is more than ninety days old may establish asylum eligibility by showing a change in personal circumstances but that aliens who remain in the United States for more than ninety days following a final removal order must show changed

circumstances in their country of nationality in order to file a number-barred motion to reopen. In making this argument, Averianova fails to recognize that the two groups are not similarly situated. Even if the two groups were similarly situated, however, Averianova's claim would still fail. "Disparate treatment of similarly situated aliens will be upheld . . . if the Government has a rational basis for its classifications." *Id.* In this case, we conclude that the Government has a rational basis for preventing aliens like Averianova, who remain in the United States for more than ninety days following final orders of removal, from being able to file successive motions to reopen removal proceedings merely by changing their personal circumstances. *See Wen Ying Zheng v. Mukasey*, 509 F.3d 869, 871 (8th Cir. 2007) ("[I]t would be ironic, indeed, if petitioners . . . who have remained in the United States illegally following an order of deportation, were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities." (quoting *Wei Guang Wang*, 437 F.3d at 274)). Thus, we conclude that Averianova's equal protection claim also fails.[6]

## III. CONCLUSION

For the foregoing reasons, we deny Averianova's petition for review.[7]

_____

_____

[6]Because "our judicial review is limited to the administrative record," *Lukowski v. INS*, 279 F.3d 644, 646 (8th Cir. 2002), we deny Averianova's pending motion to supplement the record. *See Grass v. Gonzales*, 418 F.3d 876, 879 (8th Cir. 2005).

[7]Averianova also argues that the BIA erred in denying her application for asylum, withholding of removal, and protection under the CAT. Because the only subject of Averianova's petition for review is the BIA's denial of her April 14, 2008 "Motion for Reconsideration & Motion to Reopen Removal Proceedings Due to Changed Country Conditions," we need not address the merits of her underlying claims.