# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2388

_____

| | |
|---|---|
| Juan Carlos Camarillo-Jose, aka Richard Lozano Arambulo, | * * * |
| Petitioner, | * |
| | * Petition for Review of a Final |
| v. | * Decision of the Board of |
| | * Immigration Appeals. |
| Eric H. Holder, Jr., Attorney General of the United States of America, | * * |
| | * |
| Respondent. | * |

_____

Submitted: February 14, 2012
Filed: May 7, 2012

_____

Before RILEY, Chief Judge, WOLLMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Juan Carlos Camarillo-Jose petitions for review of an order of the Board of Immigration Appeals (BIA), denying his motion to reopen his immigration proceeding. We deny the petition.

## I. *Background*

A native and citizen of Mexico, Camarillo allegedly entered the United States near San Ysidro, California, on or about February 1, 1999. Since that time, Camarillo has lived with his wife and two United-States-citizen children.

On June 26, 2009, the Department of Homeland Security (DHS) issued a Notice to Appear, charging Camarillo with removability under 8 U.S.C.§ 1229(b)(1). On November 3, 2009, Camarillo filed an application for cancellation of removal and, in the alternative, a request for voluntary departure.

On May 10, 2010, the immigration judge (IJ) held a hearing on Camarillo's removability. At the hearing, Camarillo testified that his children would suffer hardship if he were removed. In an oral decision, the IJ ruled that Camarillo failed to establish that his departure would result in "exceptional and extremely unusual hardship" to his children as required by 8 U.S.C. § 1229b(b), and that Camarillo failed to establish that he lived in the United States continuously for 10 years. The IJ, however, granted Camarillo's alternative request for voluntary departure. On June 7, 2010, Camarillo timely appealed the IJ's decision and filed proof of payment of his departure bond.

On April 8, 2011, the BIA upheld the IJ's determination that Camarillo failed to establish the requisite degree of hardship to his children. The BIA also denied Camarillo's request for voluntary departure, believing that he did not file evidence that he paid a voluntary departure bond. This belief was unfounded.

In response, on May 2, 2011, Camarillo filed a motion to reconsider, requesting reinstatement of the IJ's grant of voluntary departure and a motion to reopen his proceeding under 8 C.F.R. § 1003.2 based on new evidence. In support of his motion to reopen, Camarillo submitted a six-page Individual Education Plan (IEP), prepared by the McKinley Early Child Center, which stated that Camarillo's son would benefit from special-education-related services because tests "indicate[d] that he [met] criteria for developmental delay."

On May 27, 2011, the BIA reinstated the IJ's grant of voluntary departure, but denied Camarillo's request to reopen his removal proceeding based on the new

evidence. The BIA found "that the new evidence lacks specificity regarding the nature and seriousness of the learning disability, and it does not satisfy [Camarillo's] 'heavy burden' of proving that it would likely change the result in the case."

## II. *Discussion*

Camarillo argues that the BIA erred by failing to consider the new evidence and distorting that evidence in denying his motion to reopen. "Because motions to reopen are disfavored, . . . we review the BIA's decision . . . under a highly deferential abuse of discretion standard." *Averianova v. Holder*, 592 F.3d 931, 936 (8th Cir. 2010) (quotation and citation omitted).

"The BIA abuses its discretion if its decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where [it] fails to consider all factors presented by the alien or distorts important aspects of the claim." *Id.* (quotation and citation omitted). "[T]he BIA must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (quotation and citations omitted).

Camarillo argues that the BIA failed to consider his new evidence—the IEP evidencing his son's developmental delay. Supporting his argument, Camarillo quarrels with the BIA's conclusion that the new evidence "lacks specificity," and reciprocally challenges the lack of specificity in the BIA's written decision reaching this conclusion. But "the BIA has no duty to write an exegesis on every contention." *Id.* at 936 (quotation and citation omitted); *Barragan-Verduzco v. INS*, 777 F.2d 424, 426 (8th Cir. 1985) (upholding a decision by the BIA where it "essentially disposed of the petitioners' appeal with two short statements"). The BIA need only "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* at 426 (quotation and citation omitted). Here, Camarillo points to no evidence that the BIA

did not review the IEP. Rather he merely disagrees with the weight the BIA ascribed the new evidence when it concluded that it lacked specificity. *See Vargas v. Holder*, 567 F.3d 387, 392 (8th Cir. 2009) (rejecting a challenge to a BIA decision where the petitioner's "argument amount[ed] only to a disagreement with the outcome of the BIA's weighing of . . . factors"). Upon review, we cannot say that the BIA did not consider the IEP.

Camarillo also argues that the BIA distorted the new evidence by describing his son's developmental delay as a learning disability. The crux of the IEP addressed the child's ability to learn, speak, and socialize. While it would have been better if the BIA more accurately described Camarillo's son's developmental delay, this mislabeling alone does not show that the BIA improperly distorted the substance of the child's IEP.

Finally, we note that Camarillo ignores the BIA's finding that the new evidence "does not satisfy [his] 'heavy burden' of proving that it would likely change the result in the case." Camarillo had the burden of showing how his removal would cause "exceptional and extremely unusual hardship" to his children. *See* 8 U.S.C. § 1229b(b). But the IEP contains no information about how Camarillo's absence would adversely affect his son's developmental delay, much less how his absence would cause "exceptional and extremely unusual hardship." Nor does the IEP show how diminished educational opportunities in Mexico are "exceptional and extremely unusual" to a child with a developmental delay. As the BIA noted in its original decision, "Diminished educational opportunity, while regrettable, is similar to that faced by many children whose parents are removed." Camarillo adduced no evidence to show how his son's developmental delay would worsen in Mexico. "Consequently, the BIA was within its discretion in determining that the new evidence of changed circumstances did not warrant reopening [Camarillo]'s case." *Lopez-Amador v. Holder*, 649 F.3d 880, 887 (8th Cir. 2011).

-4-

### III. *Conclusion*

Accordingly, we deny the petition.

_____