NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0361n.06

No. 18-4189

FILED
Jul 15, 2019
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

STEPHEN SHAKKURI,

     **Petitioner,**

v.

**WILLIAM P. BARR, U. S. Attorney General,**

     **Respondent.**

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

---

**BEFORE:**     COLE, Chief Judge; SILER and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Stephen Shakkuri petitions this Court to review the Board of Immigration Appeals' November 6, 2018 order denying his application for deferral of removal under the United Nations Convention Against Torture, 8 C.F.R. § 1208.17(a), as well as his motion to remand for consideration of new evidence, 8 C.F.R. § 1003.2(b)(1), (c)(4). Petitioner's application and motion allege that, if removed to Iraq, he would likely be tortured by both the Iraqi government and the government-aligned Popular Mobilization Forces because he is a Chaldean Christian, has resided in the United States for virtually his entire life, has prior criminal convictions in the United States, and is a plaintiff in a highly publicized class action lawsuit regarding the deportation of Iraqi nationals. For the reasons set forth below, we **DISMISS IN PART** and **DENY IN PART** the petition for review.

## BACKGROUND

### Factual Background

Petitioner is a native and citizen of Iraq who first entered the United States in 1980 at the age of two. (RE 8, Administrative Record, PageID # 1695.) Since that time, Petitioner has been a lawful permanent resident. (*Id.*) However, between 1995 and 1997, Petitioner was convicted of a total of two counts of retail fraud, in violation of Mich. Comp. Laws § 750.356c, and one count of breaking and entering, in violation of Mich. Comp. Laws § 750.110. (*Id.* at PageID # 1695, 1698.)

In 2001, Respondent initiated removal proceedings against Petitioner. (*Id.*) Respondent charged Petitioner with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), as a lawful permanent resident convicted of two offenses involving moral turpitude, and pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), as a lawful permanent resident convicted of an aggravated felony offense. (*Id.* at PageID # 1695.) Petitioner conceded removability, and was ordered to be removed from the United States. (*Id.* at PageID # 1132.)

Between 2001 and 2017, the government was unable to execute Petitioner's order of removal due to Iraq's longstanding refusal to provide necessary travel documents for the repatriation of Iraqi nationals from the United States. *See generally Hamama v. Adducci*, 258 F. Supp. 3d 828, 830 (E.D. Mich. 2017). However, in March 2017, Iraq began to cooperate with the government's repatriation efforts, ostensibly as part of an agreement whereby the government removed Iraq from the list of countries set forth in Executive Order 13780, Executive Order Protecting The Nation From Foreign Terrorist Entry Into The United States. *Id.* Accordingly, in

June 2017, Petitioner was one of over one hundred Iraqi nationals subject to active orders of removal who were arrested in Detroit by Immigration and Customs Enforcement. *Id.*[1]

## Procedural History

In December 2017, following his arrest, Petitioner moved to reopen his removal proceedings on the basis of changed country conditions in Iraq, and applied for deferral of removal under the United Nations Convention Against Torture ("CAT"). (RE 8, PageID # 1142.) Petitioner's application alleges that, if removed to Iraq, he would likely be tortured by both the Iraqi government and the government-aligned Popular Mobilization Forces ("PMF") because he is a Chaldean Christian, has resided in the United States for virtually his entire life, has prior criminal convictions in the United States, and is a plaintiff in a highly publicized class action lawsuit regarding the deportation of Iraqi nationals. An Immigration Judge ("IJ") granted Petitioner's motion and ordered an evidentiary hearing on his deferral application. (*Id.* at PageID # 1148–49.)

In April 2018, the IJ conducted the evidentiary hearing on Petitioner's deferral application, during which Petitioner and Respondent submitted a plethora of documentary and testimonial evidence regarding whether Petitioner would likely be tortured if removed to Iraq. (*Id.* at PageID # 291.) As part of this submission of evidence, Respondent objected to the qualification of two of Petitioner's witnesses, Daniel Smith and Rebecca Heller, as expert witnesses. (*Id.* at PageID # 296.) Following arguments on the objection, the IJ determined that neither witness was qualified

---

[1] Petitioner is a plaintiff in *Hamama v. Adducci*, a highly publicized class action lawsuit filed by the Iraqi nationals who were arrested in Detroit and in other cities across the United States. In December 2018, a divided panel of this Court vacated two preliminary injunctions issued by the district court in that case that prohibited the plaintiffs' removal and ordered that they be granted bond hearings. *See Hamama v. Adducci*, 912 F.3d 869, 871–72 (6th Cr. 2018). However, the lawsuit remains ongoing. Meanwhile, Petitioner, like many of the other plaintiffs, has pursued relief in his own immigration case, which is now before us.

3

to testify as an expert, but allowed both to testify as percipient witnesses. (*Id.* at PageID # 300.) In May 2018, the IJ denied Petitioner's application for deferral of removal under the CAT. (*Id.* at PageID # 221.)

Petitioner appealed to the Board of Immigration Appeals ("BIA"). (*Id.* at PageID # 199.) In support of his appeal, Petitioner submitted additional documentary evidence, including updated State Department reports, news reports, and declarations from Petitioner's percipient witnesses, all of which the BIA construed as a motion to remand for consideration of new evidence. (*Id.* at PageID # 3.) On November 6, 2018, the BIA denied both Petitioner's application for deferral of removal under the CAT and his motion to remand for consideration of new evidence. (*Id.*) The BIA reasoned that Petitioner had not established that it is more likely than not that he would be tortured if removed to Iraq, and that Petitioner had not established why the additional documentary evidence was both material and unavailable at the time of the evidentiary hearing. (*Id.* at PageID # 3–5.)

This petition for review followed.

## DISCUSSION

### I. Jurisdiction

"Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if" convicted of two offenses involving moral turpitude, or one aggravated felony offense. 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii). And "no court shall have jurisdiction to review any final order of removal against any alien who is removable by reason of" such convictions, except insofar as a petition for review raises "constitutional issues or questions of law." 8 U.S.C. § 1252(a)(2)(C)–(D). Petitioner concedes he is removable by reason of having been convicted of two offenses involving moral turpitude, and one aggravated felony offense. (Brief for Appellant

at 1.) And the BIA's denial of an application for deferral of removal is a final order of removal. *Ventura-Reyes v. Lynch*, 797 F.3d 348, 258 (6th Cir. 2015). Accordingly, we have jurisdiction to review Petitioner's final order of removal only insofar as his petition for review raises constitutional issues or questions of law. Questions of law include, for example, whether the BIA assigned the petitioner an incorrect burden of proof, whether the BIA improperly construed a statute, and whether the BIA totally overlooked or seriously mischaracterized important facts. *Shabo v. Sessions*, 892 F.3d 237, 239–40 (6th Cir. 2018). However, "whether the BIA [in]correctly considered, interpreted, and weighed the evidence presented" is not a question of law. *Id.* at 239 (quotation omitted).

## II.     Standard of Review

We generally review de novo all questions of law raised in a petition for review. *Id.* at 239–40. However, we review the BIA's denial of a motion to remand for consideration of new evidence for an abuse of discretion. *Dugboe v. Holder*, 644 F.3d 462, 469 (6th Cir. 2011). "An abuse of discretion occurs if the denial was made 'without a rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination.'" *Yu Yun Zhang*, 702 F.3d 878, 879 (6th Cir. 2012) (quotation omitted).

## III.    Analysis

Petitioner petitions this Court to review numerous questions which he amasses into one lengthy question presented. We interpret his question presented as raising five distinct questions, only one of which requires much discussion and none of which warrants relief. We will address each in turn.

**A.      Whether Petitioner established that it is more likely than not that he would be tortured if removed to Iraq**

Whether Petitioner established that it is more likely than not that he would be tortured if removed to Iraq is a question of fact that we lack jurisdiction to review because "we are being asked to determine whether the BIA 'correctly considered, interpreted, and weighed the evidence presented' by [Petitioner] of his likelihood of torture." *Shabo*, 892 F.3d at 241 (quotation omitted). Petitioner argues that we should treat whether an applicant for relief under the CAT established that it is more likely than not that he or she would be tortured if removed as a question of law because the BIA does so. (*See* Brief for Appellant at 17.) However, we are bound by our prior published decision in *Shabo*, *see United States v. Calvetti*, 836 F.3d 654, 670 n.4 (6th Cir. 2016), and the fact that the BIA reviews something as a question of law does not mean that we must as well, *see Mihus v. Sessions*, 726 F. App'x 417, 429 (6th Cir. 2018). Accordingly, we dismiss this question for lack of jurisdiction, and proceed to the next question.

**B.      Whether the Board of Immigration Appeals assigned Petitioner an incorrect burden of proof**

Whether the BIA assigned Petitioner an incorrect burden of proof is a question of law that we have jurisdiction to review. *Shabo*, 892 F.3d at 239. Therefore, we proceed to the merits of this question.

An applicant for relief under the CAT bears the burden of establishing that it is "more likely than not" that he or she would be tortured if deported to the country of removal. *Bi Qing Zheng v. Lynch*, 81 F.3d 287, 294 (6th Cir. 2016). And in determining whether an applicant has met that burden, "all evidence relevant to the possibility of future torture shall be considered." 8 C.F.R. § 1208.16(c)(3). Two important rules can be derived from this basic framework for CAT claims.

First, in determining whether an applicant has established that it is more likely than not that he or she would be tortured if deported to the country of removal, the probability of torture from

6

all entities and for all reasons must be considered in the aggregate. *See Tran v. Gonzales*, 447 F.3d 937, 944 (6th Cir. 2006). For instance, if an applicant alleges a probability of torture from multiple entities, he or she need not demonstrate that the probability of torture by "one of the entities, taken alone," exceeds 50%; rather, he or she "is entitled to CAT protection if he [or she] is able to demonstrate that the cumulative probability of torture by . . . [all of the] entities exceeds 50%." *Kamara v. Attorney General of the U.S.*, 420 F.3d 202, 213 (3d Cir. 2005); *see also Rodriguez-Aras v. Whitaker*, 915 F.3d 968, 973 (4th Cir. 2019); *Cole v. Holder*, 659 F.3d 762, 775 (9th Cir. 2011). And the same is true if an applicant alleges a probability of torture for multiple reasons. *See Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015). In other words, the probability that an applicant would be tortured if deported to the country of removal is the "sum of the weighted probability" of torture from each entity and for each reason.[2] *Kamara*, 420 F.3d at 214. Thus, an applicant *can* demonstrate that it is more likely than not that he or she would be tortured if deported to the country of removal *even if* the probability of torture from each entity, or for each reason, taken alone, does not exceed 50%. *Id.*

Second, in determining whether an applicant has established that it is more likely than not that he or she would be tortured if deported to the country of removal, if an applicant alleges a probability of torture in the form of a hypothetical chain of events, each event in the chain must be more likely than not to occur. *See In re J.F.F.*, 23 I&N Dec. 912, 917 (BIA 2006). Otherwise, it is impossible for the chain of events as a whole to be more likely than not to occur. *See id.* For

---

[2] The probability of torture is rarely, and should hardly be, reduced to mathematical formulas. However, two formulas are necessary at this juncture to clarify how the sum of weighted probabilities is calculated. If the events are mutually exclusive, *e.g.*, an applicant will either end up in one part of the country of removal and risk torture from entity *A*, or end up in another part of the country of removal and risk torture from entity *B*, the sum of the weighted probabilities is expressed as: $P(A \text{ or } B) = P(A) + P(B)$. *See Kamara*, 420 F.3d at 214 n.10. If the events are not mutually exclusive, *e.g.*, an applicant will end up in one part of the country of removal and risk torture from entity *A*, entity *B*, or both, the sum of the weighted probabilities is expressed as: $P(A \text{ or } B) = P(A) + P(B) - P(A \text{ and } B)$. *See id.* The latter formula accounts for the probability that both *A* and *B* occur. *See id.*

instance, if an applicant alleges a probability of torture because he or she will be will be unable to acquire necessary mental health medication in the country of removal, will commit a crime without that medication, will be arrested for that crime, and then will be tortured by the police, a finding that it is not more likely than not that the applicant will be unable to acquire the necessary mental health medication precludes a finding that it is more likely than not that the applicant would be tortured if deported to the country of removal. *See id.*; *see also Ramos Nunes v. Sessions*, 751 F. App'x 364, 366 (4th Cir. 2018); *Francis v. Sessions*, 720 F. App'x 855, 856 (9th Cir. 2018); *Jamai v. Attorney General of the U.S.*, 635 F. App'x 42, 45 (3d Cir. 2015); *Isaacs v. Holder*, 353 F. App'x 515, 517 (2d Cir. 2009).

These two rules are not inconsistent with one another. The first governs *independent* probabilities of torture, such as torture from multiple entities or for multiple reasons, while the second governs *interdependent* probabilities of torture, such as torture that results from a hypothetical chain of events. However, these two rules are also not mutually exclusive; an applicant might allege *both* independent *and* interdependent probabilities of torture. For instance, an applicant might allege that he or she will be detained at the airport in the country of removal due to a lack of proper travel documentation, will be transferred to the custody of a government-affiliated militia, will be transported to a detention facility, and then will be tortured because of his or her religion, prior criminal convictions in the country of removal, or ties to the United States. In determining whether that applicant established that it is more likely than not that he or she would be tortured if deported to the country of removal, both rules would apply.

In this case, Petitioner's application alleges that, if removed to Iraq, he would likely be tortured by both the Iraqi government and the PMF because he is a Chaldean Christian, has resided in the United States for virtually his entire life, has prior criminal convictions in the United States,

and is a plaintiff in a highly publicized class action lawsuit regarding the deportation of Iraqi nationals. And in his petition for review, Petitioner argues that the BIA assigned him an incorrect burden of proof by failing to consider his probability of torture from all entities and for all reasons in the aggregate. However, Petitioner's argument fails for two reasons.

First, the BIA's opinion suggests that it did consider Petitioner's probability of torture in the aggregate. The BIA identified each of Petitioner's alleged reasons for torture, and then discussed each of the entities that Petitioner alleged would torture him for those reasons, before holding that it could "discern no clear error in the [IJ's] ultimate determination that [Petitioner] did not establish that he more likely than not will suffer torture by or with the acquiescence of . . . a public official of the Iraqi government." (RE 8, PageID # 5; *see also id.* at 3–5) ("With regard to [Petitioner's] fear of torture at the hands of the PMF . . . . Turning to [Petitioner's] fear of torture by the Iraqi government . . . . Based on these findings, the [IJ] properly found that [Petitioner's] fear of torture at the hands of the PMF and the Iraqi government is speculative."). In contrast, in *Kamara*, "[t]he BIA's erroneous application of the [burden of proof] [was] evident in its opinion." 420 F.3d at 214–15. In that case, "[t]he BIA first concluded that . . . [the applicant] failed to demonstrate by a preponderance of the evidence that he will be tortured by rebel forces. . . . [and] then reasoned that [the applicant] failed to demonstrate by a preponderance of the evidence that will be tortured by the Sierra Leone government." *Id.*

Second, at least with regard to his fear of torture by the Iraqi government, Petitioner alleged his independent probabilities of torture in an interdependent form. Specifically, Petitioner alleged that he would be detained at the airport, would be transported to a detention facility, and then would be tortured for one of the many proffered reasons. And the BIA found "no clear error in the [IJ's] finding that [Petitioner's] potential detention upon his arrival," the first event in Petitioner's

9

hypothetical chain of events, was not more likely than not to occur. (RE 8, PageID # 5.) As a result, Petitioner could not establish that it was more likely than not that he would be tortured by the Iraqi government if deported to Iraq. Accordingly, we hold that the BIA did not assign Petitioner an incorrect burden of proof, deny relief on this question, and proceed to the next question.

## C. Whether the Board of Immigration Appeals failed to follow its own binding precedent

Whether the BIA failed to follow its own binding precedent is a question of law that we have jurisdiction to review only if the BIA failed to follow "legal standards or rules of decision" articulated in its binding precedent. *Montana-Gonzalez v Holder*, 780 F.3d 720, 722 (6th Cir. 2015). In contrast, whether the BIA failed to follow its own binding precedent is a question of fact that we lack jurisdiction to review if it "amounts[s] to second-guessing the agency's weighing of factors" or "can be evaluated only by engaging in head-to-head comparisons between the facts of the petitioner's case and those of precedential decisions." *Ettienne v. Holder*, 659 F.3d 513, 518 (6th Cir. 2011). In this case, Petitioner argues that the BIA failed to follow its binding precedent regarding (1) the probative value of State Department reports, (2) the qualifications of Daniel Smith and Rebecca Heller, and (3) the disposition of his CAT claim.

We lack to jurisdiction to review each of Petitioner's arguments. Petitioner's first two arguments plainly take issue with the weight that the BIA afforded to the State Department reports and witness qualifications that he submitted. For instance, Petitioner argues that "[t]he BIA's failure to give the[] [State Department] reports the weight required by its own precedent requires a remand," and that "[t]he [BIA] similarly erred in concluding that the IJ properly accepted the declarations of [Respondent's] expert witnesses and afforded them full weight in addition to not treating Petitioner's witnesses Daniel Smith and Rebecca Heller as expert witness and instead accepting them only as percipient witnesses." (Brief for Petitioner at 27.). And Petitioner's third

10

argument is a classic example of the head-to-head comparisons between the facts of the petitioner's case and those of precedential decisions in which this Court has repeatedly refused to engage. For instance, Petitioner argues that the BIA has granted relief in "nearly identical [CAT] claims" filed by "similarly situated Iraqi Christians." (Brief for Petitioner at 29–31.) Accordingly, we dismiss this question for lack of jurisdiction, and proceed to the next question.[3]

### D.      Whether the Board of Immigration Appeals failed to consider petitioner's inability to safely relocate within Iraq

Whether the BIA failed to consider Petitioner's inability to safely relocate within Iraq is a question of law that we have jurisdiction to review as a due process claim. *Mateo v. Gonzales*, 217 F. App'x 476, 481 (6th Cir. 2007). Therefore, we proceed to the merits of this question.

Whether an applicant is able to safely relocate within the country of removal is one factor that the BIA is instructed to consider in determining whether to grant the applicant relief under the CAT. *See* 8 C.F.R. § 208.16(c)(3). However, although the BIA is instructed to consider this factor, it "has no duty to write an exegesis on every contention," and "need only consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Camarillo-Jose v. Holder*, 676 F.3d 1140, 1143 (6th Cir. 2012) (quotation omitted). The BIA fulfilled that duty here. Specifically, the BIA stated that

---

[3] Although we lack jurisdiction to review them, we note that Petitioner's second and third arguments are troublingly well-founded. The BIA has issued several decisions ordering IJs to treat or to reconsider treating Daniel Smith and Rebecca Heller as expert witnesses rather than as percipient witnesses. (Brief for Petitioner, Addendum Decisions A, C, D, E, & F.) And as of January 2018, all 10 immigration cases that involved plaintiffs in the *Hamama v. Adducci* class action lawsuit and that had been adjudicated on the merits had resulted in the petitioner being granted relief. *See* Jessica Zhang, *Hamama v. Adducci: Narrowing Habeas Relief for Immigrants in Removal Proceedings*, LAWFARE (Apr. 10, 2019), available at https://www.lawfareblog.com/hamama-v-adducci-narrowing-habeas-relief-immigrants-removal-proceedings. In light of these decisions, the BIA's decision in this case seems to cut against its own policy "that similarly-situated individuals should be treated similarly." *Kiegemwe v.* Holder, 427 F. App'x 473, 482 (6th Cir. 2011). However, this Court has also frequently stated that "[t]he BIA will sometimes reach opposite conclusions in cases that have many factual similarities," and that "this does not reflect a failure of the agency to follow its own precedent." *Ettienne*, 659 F.3d at 518. "Rather, the different outcomes are an expected result of the discretionary weighing required to make individualized determinations." *Id.*

"[s]everal [government] witnesses opined that Christians could live safely in parts of Iraq controlled by the Kurds," and found that the IJ did not clearly err in "accepting the [government's] evidence as more persuasive on this point." (RE 8, PageID # 5.) Accordingly, we hold that the BIA did not fail to consider Petitioner's inability to safely relocate in Iraq, deny relief on this question, and proceed to the final question.

> **E.** **Whether the Board of Immigration Appeals abused its discretion in denying Petitioner's motion to remand for consideration of new evidence**

Whether the BIA abused its discretion in denying Petitioner's motion to remand for consideration of new evidence is a question of law that we have jurisdiction to review. *Ishac v. Barr*, _ F. App'x _, 2019 WL 2236821, at *5 (6th Cir. May 23, 2019).

"A motion to [remand] shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the [evidentiary] hearing." 8 C.F.R. § 1003.2(c)(1). The BIA denied Petitioner's motion to remand for consideration of new evidence because the additional evidence, including updated State Department reports, news reports, and declarations from Petitioner's percipient witnesses, was cumulative, would therefore not likely change the result in the case, and was not previously unavailable. Petitioner asserts that the updated evidence was in fact "highly probative in demonstrating current conditions in Iraq for Chaldean Christians," and that it "became available" after the IJ closed the record for the evidentiary hearing, but he does not explain these assertions in any meaningful way. (*See* Brief for Petitioner at 19–20.) Without more, we cannot say that the BIA abused its discretion. *See, e.g.*, *Burgaj v. Holder*, 428 F. App'x 578, 582 (6th Cir. 2011) (holding that the BIA did not abuse its discretion in denying a motion to remand for consideration of new evidence because the BIA properly explained that the new evidence was either immaterial or available at the time of the evidentiary hearing). Accordingly, we hold that

the BIA did not abuse its discretion in denying Petitioner's motion to remand for consideration of new evidence, and deny relief on this final question.

## CONCLUSION

For the reasons set forth above, we **DISMISS IN PART** and **DENY IN PART** the petition for review.