# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2474

_____

Sergio Rosas-Martinez

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

No. 21-3880

_____

Sergio Rosas-Martinez

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 17, 2023
Filed: May 3, 2024

_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.
_____

SMITH, Chief Judge.

Police arrested Sergio Rosas-Martinez for possessing illegal drugs, and shortly after his conviction the Department of Homeland Security (DHS) initiated removal proceedings. Those proceedings resulted in Rosas-Martinez filing an application for deferral of removal under the Convention Against Torture (CAT). An immigration judge (IJ) granted his CAT application, but the Board of Immigration Appeals (Board) reversed the IJ's decision. Rosas-Martinez then filed a motion for reconsideration with the Board that was also denied. He then petitioned this court to review the Board's reversal of the IJ's decision and its denial of his motion for reconsideration. We deny both petitions for review.

## I. *Background*

In 1996, nine-year-old Rosas-Martinez crossed the United States-Mexico border with his mother and sister. In 2014, he met Erasmo Martinez-Salazar (Erasmo). Erasmo asked Rosas-Martinez to assist him with drug-trafficking activities. In 2019, police arrested Rosas-Martinez for possessing illegal drugs and charged him with six felonies. Those drugs were in route to Erasmo. Once informed about the arrest, Erasmo instructed Rosas-Martinez to keep quiet and not reveal Erasmo's identity to the authorities. Because Erasmo was engaged to Rosas-Martinez's cousin, Erasmo was able to—and did—instruct Rosas-Martinez's aunt to call Rosas-Martinez's mother. Rosas-Martinez's aunt called his mother three times, and each time his aunt attempted to gather details about his detention and release date. Rosas-Martinez and Erasmo last conversed in 2020.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

After Rosas-Martinez's conviction, DHS initiated removal proceedings, and an IJ ordered his removal. Rosas-Martinez then filed a CAT application for deferral of removal. He argued that if he returned to Mexico, the Sinaloa Cartel would kill or capture him because he lost their drugs when police arrested him. An IJ agreed with his argument and granted his CAT application.

DHS appealed the IJ's decision, and the Board reversed. Rosas-Martinez then filed a motion for reconsideration, and the Board denied the motion. Next, Rosas-Martinez filed two petitions for review in this court challenging the Board's reversal of the IJ's decision and its denial of his motion for reconsideration. He contends that the Board failed to properly apply its standard of review, engaged in independent factfinding, provided insufficient justification for its decision, and abused its discretion when it denied his motion for reconsideration. We consolidated the two petitions for review. *See Lasu v. Barr*, 970 F.3d 960, 964–65 (8th Cir. 2020).

## II. *Discussion*

We have previously explained the complex standard of review employed when we review the Board's reversal of an IJ's grant of a CAT application:

> [T]he Board may review questions of law, discretion, and judgment de novo, and it will review an IJ's findings of facts to determine whether they are clearly erroneous. The Board will not engage in its own factfinding, except for taking notice of commonly known facts.
>
> Whether the Board followed its regulations, refrained from independent factfinding, and applied the correct standard of review are legal questions that we review de novo. When the Board does apply the clear error standard, however, we do not review de novo whether the immigration judge's findings were clearly erroneous. Instead, we consider whether the Board provided sufficient justification for its determination. This means that the Board must adequately explain why it rejected the IJ's finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error.

*Abdi Omar v. Barr*, 962 F.3d 1061, 1064 (8th Cir. 2020) (emphasis omitted) (citations omitted). Therefore, we review de novo the first issue of whether the Board properly applied clear error review and refrained from independent factfinding.

We hold that the Board correctly applied its standard of review and did not independently find facts. The Board said that it reviews "findings of fact determined by an Immigration Judge, including credibility findings, under a 'clearly erroneous' standard." A.R. at 3 (citing 8 C.F.R. § 1003.1(d)(3)(i) (2021)). Next, the Board explained that it discerned "clear error in the Immigration Judge's predictive findings, and legal error in the Immigration Judge's application of the law." *Id.* The Board then acknowledged the IJ's factual findings and noted them in its decision. Those noted facts were that

> [t]he drug dealer for whom [Rosas-Martinez] worked ("drug dealer") threatened [Rosas-Martinez] several times after he was arrested, instructing [Rosas-Martinez] "not to say anything," not to give anyone any names, and reminding [Rosas-Martinez] that he knows where [Rosas-Martinez] and his family members live. The drug dealer had another relative contact [Rosas-Martinez]'s mother three times to ask questions regarding [Rosas-Martinez]'s detention and release date. [Rosas-Martinez] has lived in the United States for 25 years, has never been physically harmed, and has suffered no past torture.

A.R. at 4 (citations omitted). The Board then used these factual findings to show that the IJ clearly erred in its predictive finding that Rosas-Martinez would be tortured if he returned to Mexico. Thus, the Board correctly applied its standard of review and refrained from independent fact finding.[3]

---

[3]Rosas-Martinez points to *Ramirez-Peyro v. Gonzales*, 477 F.3d 637, 641 (8th Cir. 2007), and *Waldron v. Holder*, 688 F.3d 354, 360 (8th Cir. 2012), to support his argument that the Board engaged in independent fact finding. *Ramirez-Peyro* and *Waldron* are distinguishable because, unlike in those cases, here the Board cited evidence in the record and relied on the IJ's findings to support its determinations.

"[W]e [now] consider whether the Board provided sufficient justification for its determination." *Abdi Omar*, 962 F.3d at 1064. The Board determined that the IJ erred in holding that (1) "[t]he events in the United States . . . support the attenuated determination of hypothetical torture if [Rosas-Martinez] is removed from the United States," and (2) "that the government of Mexico would acquiesce to or be directly involved in" the torture of Rosas-Martinez. A.R. at 4.

The Board provided sufficient justification for its first holding. To support its decision, the Board pointed out that Erasmo's limited inquiries could not support a conclusion of probable future torture. The Board highlighted that the calls to Rosas-Martinez's mother stopped after her request; no one from the cartel contacted Rosas-Martinez's father or sister; only Erasmo contacted Rosas-Martinez; and the last time Erasmo reached out to Rosas-Martinez was in 2020. These facts sufficiently justify the Board's decision that Erasmo's few actions do not support a finding of probable future torture should Rosas-Martinez return to Mexico.

Next, the Board sufficiently justified its holding that, if Rosas-Martinez is tortured, the Mexican government would not acquiesce to or be directly involved in it. Relying on country condition evidence in the record, the Board said that "those engaged in corruption[—]from police officers to high-ranking officials[—]have been arrested, prosecuted, and imprisoned, and affected police departments have been purged." *Id.* The Board permissibly used record evidence to support its decision that the IJ's determination that Mexican authorities would acquiesce to torture was clearly erroneous. *Cf. Bautista-Bautista v. Garland*, 3 F.4th 1048, 1054 (8th Cir. 2021) (upholding the Board's decision that the Guatemalan government would not acquiesce to torture because "the record show[ed] that the government has taken steps to attempt to control the country and reduce corruption").

We further conclude that Rosas-Martinez's other arguments challenging the Board's decision lack merit.

First, Rosas-Martinez argues that the Board misapplied *Matter of J-F-F-*, 23 I. & N. Dec. 912 (A.G.2006). *J-F-F-* states that to obtain CAT relief based on a chain of hypothetical events, each link in the chain must be more likely than not to occur. *Id.* at 917–18, 918 n.4; *Mohamed v. Garland*, 9 F.4th 638, 641 (8th Cir. 2021); *Deng v. Garland*, 80 F.4th 859, 863 (8th Cir. 2023).

The Board's application of *J-F-F-* was not erroneous. In *Jima v. Barr*, we analyzed the assumptions that the IJ made and the Board rejected. 942 F.3d 468, 473 (8th Cir. 2019). Doing the same here, we note that the IJ assumed that (1) the cartel would find out about Rosas-Martinez's return to Mexico; (2) it would blame him for the seized drugs and attempt to capture, kill, or otherwise torture him; and (3) the Mexican government would acquiesce to his torture. For reasons already discussed, the Board sufficiently justified its decision that the IJ erred when it determined that the second and third assumptions were more likely than not to occur. Therefore, the Board correctly applied *J-F-F-*.

Second, Rosas-Martinez argues that the Board erred because it treated internal relocation as a bar to CAT deferral. Whether an applicant can relocate to avoid torture is one of four factors used when deciding whether to grant CAT protection. Those four factors are:

> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3) (2021).

The Board considered all the relevant factors outlined in the regulation. First, there is no evidence that Rosas-Martinez was previously tortured in Mexico. Second, the Board justifiably held that Rosas-Martinez could "live in a metropolitan area instead of his hometown." A.R. at 5. Third, the record does not show that "[s]pecific grounds . . . exist that indicate [that Rosas-Martinez] would be personally at risk" of human rights violations. *Lasu*, 970 F.3d at 966 (first alteration in original) (quoting *Ademo v. Lynch*, 795 F.3d 823, 831 (8th Cir. 2015)). And fourth, the Board agreed with the IJ's findings that corruption exists in Mexico, but then cited to record evidence that explained Mexico's recent efforts to purge bad actors from its ranks. We find no error in the Board's handling of these factors. *See Bautista-Bautista*, 3 F.4th at 1053–54; *Abdi Omar*, 962 F.3d at 1065–64.

Relatedly, Rosas-Martinez contends that he cannot return to Mexico because he would live with his mother and harm would come to her. We first note that the CAT factors do not consider whether *someone else* would be harmed if an applicant returns to their country. Instead, the second factor focuses the inquiry on whether *the applicant* can move to a part of the country where *they* are "not likely to be tortured." 8 C.F.R. § 1208.16(c)(3)(ii) (2021). But even if this was not the case, the Board adequately addressed Rosas-Martinez's argument. The Board appropriately observed that Erasmo "never harmed or threatened [Rosas-Martinez]'s family even though he knew where they lived," and "no one in [Rosas-Martinez]'s family has been contacted or threatened by any [of Erasmo's] criminal associates" A.R. at 5. The only person to contact Rosas-Martinez's family was a relative, and that relative does not appear to be a cartel member. Thus, the record does not support Rosas-Martinez's contention that he cannot live with his mother.

Third, Rosas-Martinez argues that the Board's decision conflicts with two of its other cases, and thus the Board applied the law inconsistently. The Third Circuit has stated that "[w]hen an administrative agency's decisions are inconsistent, a court cannot pick one of the inconsistent lines and defer to that one, unless only one is within the scope of the agency's discretion to interpret the statutes it enforces or to make policy as Congress's delegate." *Valdiviezo-Galdamez v. Att'y. Gen. of the U.S.*,

-7-

663 F.3d 582, 606 (3d Cir. 2011) (quoting *Gatimi v. Holder*, 578 F.3d 611, 616 (7th Cir. 2009)). Given the changes in the Mexican government, we do not think it surprising that the Board's view about that government has changed. The variability seen in the Board's decisions is not outside of the agency's discretion, and we will not pick one line of the Board's cases over the other.

Turning to the Board's denial of Rosas-Martinez's motion for reconsideration, we must decide whether the Board abused its discretion when it denied the motion. "The [Board] abuses its discretion if its decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where [it] fails to consider all factors presented by the alien or distorts important aspects of the claim." *Camarillo-Jose v. Holder*, 676 F.3d 1140, 1143 (8th Cir. 2012) (second alteration in original) (quoting *Averianova v. Holder*, 592 F.3d 931, 936 (8th Cir. 2010)). Additionally, "[m]otions to reconsider are disfavored, and the [Board] does not abuse its discretion in summarily refusing to reconsider arguments it has already rejected." *Rodriguez de Henriquez v. Barr*, 942 F.3d 444, 447 (8th Cir. 2019).

Rosas-Martinez acknowledges that his abuse-of-discretion arguments overlap with his arguments that the Board's initial decision is erroneous. Because we do not find the Board's initial decision erroneous, we hold that the Board did not abuse its discretion when it denied Rosas-Martinez's motion for reconsideration.

### III. *Conclusion*

For the foregoing reasons, we deny both petitions for review.

_____